[Cite as *Sherman v. Sherman*, 2026-Ohio-2592.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| MARCUS SHERMAN, | : | APPEAL NO. | C-250579 |
| | | TRIAL NO. | DR-2300485 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *JUDGMENT ENTRY* | |
| BRANDY SHERMAN, | : | | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/8/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *Sherman v. Sherman*, 2026-Ohio-2592.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| MARCUS SHERMAN, | : | APPEAL NO. | C-250579 |
| | | TRIAL NO. | DR-2300485 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| BRANDY SHERMAN, | : | | |
| Defendant-Appellant. | : | | |


Civil Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 8, 2026


*Goldberg Evans, LLC,* and *Leah A. Darpel*, for Plaintiff-Appellee,

*Law Office of Arica L. Underwood LLC*, and *Arica L. Underwood*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}     This is an appeal from the trial court's decision in a post-divorce action. A magistrate in the court of domestic relations found plaintiff-appellee Marcus Sherman in contempt for failing to fulfill his spousal-support obligations and for refusing to cooperate with defendant-appellant Brandy Sherman's attempts to assume the parties' mortgage with the Department of Veteran Affairs (the "VA mortgage"). Upon objections from Marcus, the trial court reversed the magistrate's finding of contempt regarding Marcus's failure to cooperate with Brandy's attempts to assume the VA mortgage.

{¶2}     Brandy now appeals, arguing in two assignments of error that the trial court lacked continuing jurisdiction to modify the parties decree of divorce and separation agreement, and that the trial court erred in failing to enforce the clear and unambiguous terms of these documents. We find Brandy's arguments to be without merit and affirm the trial court's judgment.

## I.  Factual and Procedural History

{¶3}     Marcus and Brandy were granted a decree of divorce in December 2023. The decree incorporated and adopted a separation agreement that the parties had entered. Both the decree and the separation agreement contained provisions awarding Brandy the parties' marital home, which was encumbered by the VA mortgage. Marcus was the veteran in the relationship. As relevant to this appeal, the decree provided:

> Wife shall be awarded the said real property at 9567 Wabash
>
> Way, West Chester, Ohio 45069 as her own separate property with no
>
> offset to Husband . . . .
>
> Wife shall have six (6) months after the date of the Decree in this
>
> matter to refinance or assume the mortgage note on the property to

remove Husband from financial liability. Husband shall execute any necessary deed to convey his one half of the marital interest in this property to Wife upon the date that Wife secures the refinance or assumption of the mortgage note. If available, Wife shall also be entitled to assume the current VA mortgage loan for the property. After the refinance or assumption, Wife is awarded all of the net equity in the property free of any rights or interest to Husband.

If Wife cannot refinance or assume the mortgage note to remove Husband's name within 9 months of the date of the Decree, then Wife shall sell the real property at private sale.

{¶4} The separation agreement also addressed Brandy's retention of the parties' home and the related refinancing or assumption of the mortgage on that home. It provided:

Wife shall have six (6) months after the date of the Decree in this matter to refinance or assume the V.A. mortgage note on the property so as to remove Husband from financial liability. If Wife can timely refinance or assume the mortgage note to remove Husband's name, Husband shall execute any necessary deed to convey his one half of the marital interest in this property to Wife upon the date that Wife secures the refinance or assumption of the mortgage note. After the refinance or assumption, Wife is awarded all of the net equity in the property free of any rights or interest to Husband.

If Wife does not refinance or assume the mortgage note to remove Husband's name within six (6) months after the date of the Judgement [sic] Decree in this matter, then the parties agree that the

property is to be sold at private sale and the net proceeds after customary and necessary payments shall be awarded to wife free and clear of any rights, claims or interests to Husband . . . .

This court shall retain jurisdiction over this real property until it is distributed or disposed of in accordance with the provisions stated herein.

{¶5} Approximately nine months after the decree was granted, Brandy filed a motion for contempt alleging that Marcus failed to execute a property deed relinquishing his marital interest in the parties' home and refused to execute documents that were required for Brandy to assume the VA mortgage. She further alleged that Marcus failed to pay spousal support.

{¶6} Marcus also filed a motion for contempt, alleging that Brandy failed to comply with the provision in the decree requiring her to refinance the mortgage on the marital residence to remove him from financial lability. He contended that Brandy's failure to do so impacted his ability to secure a mortgage for a new residence. Brandy opposed Marcus's motion, arguing that the "real issue in the matter is the VA loan entitlement that [Marcus] is entitled to," and that Marcus was aware at the time that he signed the separation agreement that his VA entitlement benefits would be impacted if Brandy assumed the mortgage loan.

{¶7} A hearing on the competing motions for contempt was held before the magistrate.[1] Brandy testified that, pursuant to the terms of the parties' decree, she had six months to either assume the VA mortgage, refinance the mortgage, or sell the

---

[1] Because the trial court's finding of contempt regarding Marcus's compliance with his spousal-support obligations is not challenged on appeal, we do not include any testimony that was offered on that topic in our summary of the testimony given at the hearing.

home. Her testimony made clear that assumption of the mortgage was the most desirable option, as she would be saddled with a much higher interest rate if she refinanced. Brandy acknowledged that Marcus would lose a portion of his VA eligibility if she assumed the mortgage. She attempted to explain this impact, stating,

> When he goes to buy another home, whatever portion is of the mortgage of our current home, as on his VA entitlement, he would not be able to—basically, the benefit is he doesn't have to make a down payment on a home. So if he can spend $800,000, they're going to take off $322,000, whatever my balance [on the current VA mortgage] is. So if he purchases a home, that particular amount would get subtracted from whatever his purchase amount is. If I were to default on the loan, it will not count against his credit, but you don't get that money back towards his benefit.

**{¶8}** Brandy explained that she consulted with a bank in February 2024 to determine how to apply for assumption of the VA mortgage. She learned that she was unable to apply at that time because she did not have the necessary funds and she needed to pay several outstanding bills. Brandy testified that she was able to begin the application process in June 2024.

**{¶9}** Brandy testified that the parties' VA mortgage was assumable, and that she and Marcus had discussed the impact of an assumption on his entitlement benefits during their predivorce settlement negotiations. She stated that Marcus was "well aware" that his entitlement would be impacted by an assumption because this was not the parties' "first VA home purchase." Brandy testified that she initially wanted to include language in the separation agreement acknowledging the impact on Marcus's benefits and that she "should have fought harder to make sure that more things were

6

spelled out" in the agreement. Brandy also identified a form that the Department of Veterans Affairs issued in April 2024 to inform veterans that "their entitlement will be impacted if they allow someone to assume their loan."

**{¶10}** Brandy testified that she received an email from the holder of the parties' VA mortgage informing her that Marcus was not willing to forfeit his entitlement benefits and was refusing to sign a form necessary for her to assume the mortgage. According to Brandy, in June 2024 Marcus offered her additional time to refinance, acknowledged the high interest rates at that time, and told her that he was not looking to purchase a house or to cause her any financial hardship.

**{¶11}** Brandy discussed several emails that she had received from Marcus stating that he would not forfeit any portion of his VA entitlement or sign a quit-claim deed and offering her additional time to shop for competitive interest rates. Brandy testified that she has attempted to assume the mortgage, but that Marcus will not sign the necessary documents.

**{¶12}** Marcus, in turn, testified that Brandy failed to assume or refinance the mortgage within the six-month period accorded to her in the decree, and that he refused to sign a quit-claim deed because doing so would not release him from financial liability. He explained, "[I]n the event of an assumption, my name would essentially no longer be attached to the mortgage via the mortgage company. However, financial obligation and liability remains intact with the Department of Veteran Affairs."

**{¶13}** Marcus testified that if Brandy defaulted on the mortgage payment, he would have to pay approximately $89,000 out of pocket to restore his benefits to their maximum value. He explained that his entitlement remained attached to the property until the mortgage note was paid in full, and that he would suffer the impact to his

benefits when he attempted to purchase another home. Marcus stated, "[T]he ultimate responsibility for the VA entitlement, it rests upon the veteran, not the civilian who's attempting to assume it." Marcus additionally testified that he did not learn that Brandy was attempting to assume the loan until nine months after the decree was issued, which was past the deadline set forth in the decree.

{¶14} The magistrate issued a decision denying Marcus's motion for contempt and granting Brandy's motion. In support of the finding that Marcus was in contempt, the magistrate stated that the decree's clear language provided that "Wife shall be entitled to assume the mortgage if that option is available, and Husband shall do all acts necessary to carry out and effectuate that provision." She found that the parties presented ample evidence of Brandy's attempts to assume the VA mortgage and to obtain Marcus's cooperation, and that Marcus refused to cooperate. The magistrate additionally found that Marcus had failed to fulfill the entirety of his spousal-support obligations. The decision provided that Marcus could purge the contempt by paying Brandy the remainder of his spousal-support obligations and by doing "all acts necessary to cooperate in the VA loan assumption process so that Wife can assume said loan and transfer title of the real estate to her individual name."

{¶15} Marcus filed objections to the magistrate's decision. He challenged the magistrate's findings that (1) he had not complied with his spousal-support obligations, (2) he was in contempt for "refusing to execute the property deed for the marital residence," and (3) Brandy was not in contempt for failing to timely remove him from liability associated with the marital residence.

{¶16} As relevant to this appeal, Marcus argued in support of his objections that his entitlement benefit, which he described as "the amount by which the VA will secure a loan on behalf of [a] member," was encumbered by the amount of the loan

remaining on the marital residence. He argued that a loan assumption did not remove him from financial liability because if Brandy defaulted, he remained liable to the VA for a percentage of the entitlement. He also argued that an assumption resulted in less entitlement available to him to secure an additional VA loan for the purchase of his own residence. For these reasons, he argued, he had not been removed from financial liability and was within his rights to refuse to sign the property deed.

{¶17} Brandy opposed Marcus's objections. As relevant to this appeal, she argued that Marcus could not rely on a collateral issue, specifically his entitlement benefits, to defeat his clear duty to execute necessary documents and cooperate with her assumption of the loan.

{¶18} The trial court issued a decision sustaining Marcus's objections in part and overruling them in part. It sustained Marcus's objection to the magistrate's finding that he was in contempt for failing to cooperate with Brandy's assumption of the VA mortgage. The court noted that the plain language of the separation agreement provided that Brandy had six months to refinance or assume the mortgage "so as to remove Husband from financial liability." It found that,

> based on the testimony surrounding the effect of assumption of the VA
> loan on Husband's entitlement that Wife's assumption of the loan would
> *not* fully remove Husband from financial liability as he would have to
> pay approximately $89,000 to the VA if he wished to use his full
> entitlement should Wife default. Accordingly, Husband was within his
> rights to refuse to sign the documentation for Wife to assume the loan.

(Emphasis in original.) The court held that there was not sufficient evidence presented to hold Marcus in contempt for failing to cooperate with the assumption of the VA mortgage, and it awarded Brandy six additional months from the date of the decision

to refinance the mortgage to remove Marcus from financial liability or to sell the property. The trial court otherwise overruled Marcus's objections.

**{¶19}** Brandy now appeals.

## II. *Alleged Modification of the Decree and Separation Agreement*

**{¶20}** In her first assignment of error, Brandy argues that "the trial court erred as a matter of law because it lacked continuing jurisdiction to modify the final Decree of Divorce and Separation Agreement." As such, she contends, the trial court could not relieve Marcus of his clear obligation to cooperate with her assumption of the VA mortgage.

**{¶21}** Marcus's response is two-fold. He first contends that the trial court had exclusive, continuing jurisdiction over Brandy's obligation to refinance the mortgage, assume the mortgage, or sell the home because a clause in the separation agreement provided that the court "shall retain jurisdiction over this real property until it is distributed or disposed of in accordance with the provisions stated herein." He further argues that the trial court did not actually modify the terms of the parties' decree and separation agreement, but rather enforced them. We need not address Marcus's first argument because his second is dispositive.

**{¶22}** In finding that Marcus was not in contempt for failing to cooperate with Brandy's attempts to assume the VA mortgage, the trial court did not modify either the decree or the separation agreement. The separation agreement provided, "Wife shall have six (6) months after the date of the Decree in this matter to refinance or assume the V.A. mortgage note on the property *so as to remove Husband from financial liability*." (Emphasis added.) The decree contained nearly identical language. The trial court determined that, based on the evidence presented, Brandy's attempted assumption of the mortgage would not remove Marcus from financial

10

liability and that Marcus was within his rights to refuse to cooperate with the assumption. All the trial court did was enforce the provision as written, which it indisputably had jurisdiction to do.

**{¶23}** Because the trial court did not modify the decree or separation agreement, Brandy's first assignment of error is overruled.

### III. Review of Trial Court's Finding that Marcus was not in Contempt

**{¶24}** In her second assignment of error, Brandy argues that the trial court erred as a matter of law by failing to enforce the clear and unambiguous language of the parties' decree of divorce and separation agreement. She contends that these documents permitted her to assume the loan and mandated Marcus's cooperation with the assumption process, and that the documents did not condition her assumption of the VA mortgage on the preservation of Marcus's VA entitlement.

**{¶25}** "[W]e review de novo the interpretation of a separation agreement incorporated in a divorce decree." *Strohm v. Strohm*, 2014-Ohio-3405, ¶ 12 (1st Dist.). Whether language in a decree is ambiguous is a question of law. *Hoog v. Hoog*, 1999 Ohio App. LEXIS 4421, *8 (1st Dist. Sept. 24, 1999). "Generally, when contract language is susceptible to two or more reasonable interpretations, then ambiguity exists—and this situation can occur when a material phrase in the provision is undefined." (Cleaned up.) *Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 2020-Ohio-1471, ¶ 17 (1st Dist.). When a contract is ambiguous, a court may look at extrinsic evidence to determine the parties' intent. *Ruehl v. Air/Pro, Inc.*, 2005-Ohio-1184, ¶ 5 (1st Dist.).

**{¶26}** If an appellate court finds that the terms of a decree are ambiguous, the trial court's interpretation is reviewed for an abuse of discretion. *Id.* at ¶ 4; *Stevens v. Stevens*, 2018-Ohio-2662, ¶ 31 (2d Dist.). An abuse of discretion occurs when "a court

exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. It implies that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Gipson v. Mercy Health Sys. of S.W. Ohio*, 2025-Ohio-2208, ¶ 12 (1st Dist.). Under this deferential standard of review, an appellate court may not substitute its judgment for that of the trial court. *Id.*

**{¶27}** We do not agree with Brandy's assertion that the language in the parties' decree and separation agreement is unambiguous. These documents awarded Brandy the marital residence and provided that she had six months after the date of the decree to refinance or assume the mortgage on the property "to remove Husband from financial liability." Under these plain terms, Brandy was only entitled to assume the mortgage if doing so removed Marcus from financial liability. But neither the decree nor the separation agreement defined or explained what constituted "financial liability."

**{¶28}** While Brandy agrees that her assumption of the loan will have a collateral impact on Marcus's entitlement benefits with the VA, she argues that this impact did not subject Marcus to financial liability. She also argues that the trial court could not consider Marcus's entitlement benefits when determining whether Marcus was removed from financial liability because the benefits were not reserved or addressed in the decree or separation agreement. Marcus takes the opposite position and argues that the impact of an assumption on his entitlement benefits is a form of financial liability. The fact that both Brandy and Marcus have put forth reasonable interpretations of the phrase "financial liability" demonstrates the ambiguity in the decree and separation agreement with respect to this term. *See Ma*, 2020-Ohio-1471, at ¶ 17 (1st Dist.).

{¶29} The trial court agreed with Marcus and interpreted the term "financial liability" to include a collateral impact on Marcus's entitlement benefits. The court found that an assumption would not remove Marcus from financial liability because he "would have to pay approximately $89,000 to the VA if he wished to use his full entitlement should Wife default." Contrary to Brandy's assertion, we find no error or abuse of discretion in the trial court's consideration of Marcus's entitlement benefits when determining whether he was removed from liability.

{¶30} Because of the ambiguity in the term "financial liability," the trial court relied on extrinsic evidence, specifically the testimony offered by the parties at the hearing, to interpret the term and determine the parties' intent. *See Ruehl*, 2005-Ohio-1184, at ¶ 5 (1st Dist.). And the trial court's finding that the impact on Marcus's entitlement benefits *was* a form of financial liability was supported by the testimony presented at the hearing.

{¶31} Brandy's testimony established that the parties were aware, prior to signing the separation agreement, that an assumption of the VA mortgage impacted Marcus's entitlement benefits. She testified that she "should have fought harder to make sure that more things were spelled out" in the documents regarding the entitlement. From this testimony, the trial court could reasonably have determined that the parties had considered the entitlement benefits, and that Marcus's refusal to include any language about the impact of an assumption on those benefits in the separation agreement meant that he did not agree that an assumption of the mortgage removed him from financial liability.

{¶32} Because it determined that Brandy's assumption of the mortgage would not remove Marcus from financial liability, the trial court found that Marcus was not in contempt for failing to cooperate with the assumption of the VA mortgage and sign

over the deed to the marital residence. This was not an abuse of discretion. *See Masters v. Masters*, 2010-Ohio-5961, ¶ 10 (1st Dist.) ("An appellate court applies an abuse-of-discretion standard in reviewing the trial court's decision whether to hold a party in contempt."). Further, the trial court's decision did not leave Brandy without recourse. While Brandy preferred to assume the mortgage because it was the best option financially, per the terms of the decree she could still refinance the mortgage or sell the home.

**{¶33}** We accordingly overrule Brandy's second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **MOORE, J.,** concur.